**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

---------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | : | Chapter 15 |
|  | : |  |
| CONDOR FLUGDIENST GmbH | : | Case No. 20-_____ (___) |
|  | : |  |
| Debtor in a | : |  |
| Foreign | : |  |
| Proceeding. | : |  |
|  | : |  |
|  | : |  |

---------------------------------------------------------

**VERIFIED PETITION FOR RECOGNITION OF**
**FOREIGN INSOLVENCY PROCEEDING PURSUANT TO**
**SECTIONS 1504, 1509, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE**

Ralf Teckentrup, Christoph Debus, Christian Schmitt, and Detlef Specovius, in their capacity as the foreign representatives (the "**Petitioners**" or "**Foreign Representatives**") of Condor Flugdienst GmbH ("**Condor**" or the "**Debtor**"), subject to insolvency proceedings before the *Amtsgericht – Insolvenzgericht – Frankfurt am Main*, the Local Court – Insolvency Court – of Frankfurt am Main, (the "**German Court**"), Reference No. 810 IN 1209/19 C (the "**German Proceeding**"), as a result of the German Court's orders pursuant to the Insolvenzordnung, InsO (the "**Insolvency Code**")[1], by its undersigned United States counsel, Holland & Knight LLP, respectfully submit the Official Form Petition, this Verified Petition (together, the "**Petition**"), the accompanying Declaration of Christoph Debus executed on October 2, 2020 (the "**Debus Declaration**"), and the Declaration of Dr. H. Philipp Esser, executed on October 2, 2020 (the "**Esser Declaration**" and, together with the Debus Declaration, the "**Declarations**"), for entry of an Order, substantially in the form attached hereto as **Exhibit A** (the

---

[1] Excerpts of the relevant provisions of the Insolvency Code are attached as Exhibit 1 to the Esser Declaration.

"**Proposed Order**"), pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

(i)      recognizing the German Proceeding as a foreign main proceeding pursuant to chapter 15 of the Bankruptcy Code, and Petitioners as the Debtor's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

(ii)     granting relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

## PRELIMINARY STATEMENT

1.      The purpose of Chapter 15 of the Bankruptcy Code is to provide effective mechanisms for dealing with cases of cross-border insolvency, with the express objectives of cooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses.  *See, e.g., In re Suntech Power Holdings Co., Ltd.,* 520 B.R. 399, 413 (Bankr. S.D.N.Y. 2014); 11 U.S.C. § 1501(a)(1)-(5)).  To that end, the Foreign Representatives request recognition of the German Proceeding as a foreign main proceeding primarily to obtain this Court's assistance in enforcing the stay of proceedings and actions against the Debtor and property of their estates as ordered by the German Court through the Commencement Order (as defined below), and to ensure that an insolvency plan confirmed by the German Court will be recognized and effective in the United States. Recognition of the German Proceeding as a foreign main proceeding would confer upon the Debtor the protection of sections 362 and 1520 of the Bankruptcy Code, thereby preventing any one creditor or subset of creditors from gaining an advantage over similarly situated creditors or otherwise interfering with the German Proceeding and implementation of orders of the German Court.

2.      As set forth in greater detail below, the Debtor is the subject of the German Proceeding, an insolvency proceeding under the Insolvency Code pursuant to, inter alia, the commencement order of the German Court entered on December 1, 2019 (the "**Commencement Order**"). As this Petition, the accompanying Declarations and the exhibits thereto demonstrate, the German Proceeding should be recognized as a foreign main proceeding.

3.      The Foreign Representatives seek precisely the type of relief that chapter 15 was designed to provide, and the German Proceeding and this Petition meet all the requirements for recognition and the requested relief. In particular, the Foreign Representatives were appointed by the German Court to administer the Debtor's assets, liabilities, and ongoing business in connection with the German Proceeding pursuant to the Insolvency Code, a law relating to insolvency or adjustment of debt. *Esser Declaration*, ¶¶ 33-35, 40.

4.      Likewise, the German Proceeding is a collective judicial proceeding as referenced in 15 U.S.C. § 101(23), subject to the oversight and control of the German Court, encompassing all creditors and stakeholders of the Debtor, which is pending in Germany, the country in which Condor was formed, maintains registered offices, maintains its center of main interests ("**COMI**"), and where Condor is engaged in substantial, non-transient, ongoing economic activity. *Debus Declaration*, ¶¶ 54-58.

5.      Pursuant to section 1516(c) of the Bankruptcy Code, Germany is presumed to be Condor's COMI because Condor was formed and maintains its registered office there. *Debus Declaration*, ¶ 54. This Petition and the accompanying Declarations further demonstrate that the Debtor's counterparties and creditors had clear and actual knowledge that Condor was a German entity. *Debus Declaration*, ¶¶ 56-58. Accordingly, the German Proceeding is a "foreign main proceeding" within the meaning of sections 101(23), 1502(4), 1516(c), and 1517(b)(1) of the Bankruptcy Code.

6.      For all of these reasons and as will be shown below, the Foreign Representatives respectfully submit that: (i) the German Proceeding is a foreign main proceeding within the meaning of sections 101(23) and 1502(4) of the Bankruptcy Code; (ii) the Foreign Representatives are the duly appointed foreign representatives of the Debtor within the meaning of section 101(24); (iii) the Foreign Representatives and the Petition comply with all the requirements of section 1515 and Bankruptcy Rule 1007(a)(4); and (iv) recognition of the German Proceeding would not be contrary to public policy under Bankruptcy Code section 1506.

7.      Under the circumstances, this Court can and should enter an order recognizing the German Proceeding as a foreign main proceeding under section 1517(b)(l).

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. The Debtor confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to the entry of a final order by this Court in connection with this Petition to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

9.      This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the German Proceeding under section 1515 of the Bankruptcy Code.

10.      Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1410(1) because the Debtor's principal U.S. assets are located in the Northern District of Illinois.  Condor owns two U.S. bank accounts, one of which is held at a branch of JPMorgan Chase, located at 111E Busse Ave., 2nd Floor, Mount Prospect, Illinois 60056. Additionally, the Debtor maintains a mailing address in this District and has an employee residing in the District who works from her residence using

Condor-owned equipment, including laptop computers and cellular telephones titled to Condor and issued by Condor to those employees.

11.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(P), and the Court may enter a final order consistent with Article III of the United States Constitution.

12.     The statutory predicates for the relief requested herein are sections 1504, 1509, 1515, 1517, 1519, 1520, and 1521 of the Bankruptcy Code.

## FACTUAL BACKGROUND

### I.      The Debtor's Business

13.     In operation since 1955, Condor is a global airline carrier based in Germany.  Condor operates a fleet of more than 50 aircraft, annually providing passenger service to approximately 9.4 million passengers to over 90 destinations in Europe, Africa, the Caribbean, Asia, and North America. *Debus Declaration*, ¶ 11. The Debtor employs over 4,000 employees around the world.

14.     The Debtor is organized as a limited liability company under German law, with its registered office in Kelsterbach, Germany and its administrative headquarters located at An der Gehespitz 50, 63263 Neu-Isenburg, Germany. The Debtor's sole shareholder is Erdsiek Vermögensverwaltungs GmbH, which is also organized as a German limited liability company. *Debus Declaration*, ¶ 10, 12.

15.     The impetus of this chapter 15 filing is the Debtor's need for the efficient administration of creditor claims and for the effectiveness of the Debtor's restructuring through an insolvency plan before the German Court, as required under the Insolvency Code.

### II.     Events Leading Up to the German Proceeding

16.     Before the initiation of the German Proceeding, Condor belonged to the Thomas Cook Group, an international tourism group with tour operation and airline business divisions ("**Thomas**

**Cook Group**" or the "**Group**"). The ultimate parent company of the Group was Thomas Cook Group plc, which had a registered office in London at that time. The Thomas Cook Group's financial strain was a product of a combination of factors, from the general economic downturn in the travel industry, increased competition and weak British currency in part as a result of the United Kingdom's withdrawal from the European Union, together with a high financing burden and structural deficits in the Group's organization. *Debus Declaration*, ¶ 17.

17.     Although efforts were initially undertaken to market the profitable parts of the Group for the sale or alternatively negotiate with the Group's lenders, bondholders, main shareholders, and other creditors in order to reach an agreement that would allow the Group to recapitalize, these efforts were ultimately unsuccessful. *Debus Declaration*, ¶¶ 18-19.

18.     Compulsory liquidation of certain of the companies in the Thomas Cook Group based in the United Kingdom was ordered on September 23, 2019. *Debus Declaration*, ¶ 19.

19.     Although Condor has historically been profitable, its liquidity was strained by obligations under an existing Profit and Loss Transfer Agreement, pursuant to which Condor was required to transfer the profits it generated to its then shareholder Condor Lufttransport 2 GmbH (now Internationale Lufttransport 2 GmbH). *Debus Declaration*, ¶ 20.

20.     Additionally, Condor's liquidity was further burdened by Condor's participation in a cash pool of the Thomas Cook Group. Condor regularly contributed to the pool, and although it could receive liquidity from the pool if and when required (such as during the weak sales months of the winter season), under this arrangement Condor had no opportunity to build up its own reserves, and when the Group companies based in the United Kingdom were forced to liquidate, Condor no longer had access to the working capital financing previously provided by these companies. As a result, Condor did not have sufficient financial resources to cover the seasonally increased financing requirements during the

winter season in particular. Thus, there was no longer any positive prognosis for Condor's continuation, leaving Condor over-indebted (*überschuldet*) as defined under the Insolvency Code and requiring the Condor management to file an insolvency petition pursuant to the Insolvency Code. *Debus Declaration*, ¶¶ 21.[2]

### III.       The German Proceeding

21.       Upon the Debtor's determination that it had become over-indebted as defined under the Insolvency Code, it submitted its application for the commencement of insolvency proceedings to the German Court thereby commencing preliminary insolvency proceedings known in Germany as *Eröffnungsverfahren* under the Insolvency Code.

22.       On September 26, 2019, pursuant to the Debtor's application, the German Court issued an order (the "**Preliminary Order**"), through which the German Court (i) qualified the preliminary insolvency proceedings as debtor-in-possession proceedings (*Eigenverwaltung*) pursuant to section 270a and as protective shield proceedings (*Schutzschirmverfahren*) pursuant to section 270b of the Insolvency Code; (ii) provided the Debtor with a three month period to present an insolvency plan; (iii) appointed Prof. Dr. Lucas F. Flöther as preliminary monitor to review the economic situation of the Debtor and to oversee the management of the Debtor's business by the Debtor's board of managing directors as debtor-in-possession; (iv) ordered a preliminary stay of enforcement against the Debtor and its assets and (v) appointed a preliminary creditors' committee. A true and correct copy of the

---

[2] Since the commencement of the protective shield proceedings, Condor's financial position has been further strained by the COVID-19 pandemic and resulting travel restrictions and flight cancellations. Although Condor flights during 2020 had been operating with greater than 90% seat occupancy until mid-March 2020, in April 2020 Condor was forced to cancel its entire scheduled flight program except for three to four weekly rotations, resulting in a total of 3,066 canceled flights for approximately 458,000 booked passengers for the month of April 2020 alone. *Debus Declaration*, ¶ 22.

Preliminary Order, together with its English translation, is attached hereto as **Exhibit B**. Preliminary Order, ¶¶ 1-3.

23.    During the preliminary insolvency proceedings, the German Court authorized the Debtor to continue operating its airline business and for that purpose to enter into the necessary agreements with relevant suppliers and customers. *Debus Declaration*, ¶ 24. Claims from such transactions are not insolvency claims but claims ranking with priority against the insolvency estate (*Masseverbindlichkeiten*). *Esser Declaration*, ¶ 34.

24.    Notice of the preliminary insolvency proceedings was given via a press release published by the German Court on its website on September 26, 2019. *Debus Declaration*, ¶ 25. An English translation of the press release is attached as Exhibit 5 to the Debus Declaration.

25.    On December 1, 2019, upon the determination that the Debtor was over-indebted and imminently illiquid under German law, the German Court issued an order commencing the German Proceeding as a permanent insolvency proceeding with respect to the Debtor, and rendering permanent much of the relief initially preliminarily granted in the Preliminary Order. A true and correct copy of the Commencement Order, together with its English translation, is attached hereto as **Exhibit C**. Pursuant to the Commencement Order, the Debtor is authorized to conduct the German Proceeding as a debtor-in-possession proceeding pursuant to which the Debtor's existing management continues to manage the Debtor's business under the supervision of the court-appointed permanent monitor (*Sachwalter*, the "**Monitor**"). As such, throughout the German Proceeding, the Debtor has continued to manage and dispose of its assets, subject to the oversight of the Monitor with respect to the management of the Debtor's business in general and with respect to the incurrence of liabilities outside the ordinary course of business in particular. *Debus Declaration*, ¶¶ 26-27.

26.     Notice of the Commencement Order was given on December 2, 2019 via publication by the German Court on a publicly available website operated by the German judicial systems, which constitutes valid service of process on all interested parties in accordance with the Insolvency Code. *Debus Declaration*, ¶ 29; *Esser Declaration*, ¶ 36.

27.     On December 3, 2019, the German Court issued a further order (the "**Claims Procedure Order**"), which was published on the same website on December 20, 2019, providing notice to all then-known insolvency creditors, i.e. creditors whose claims against the Debtor had arisen as of date of the Commencement Order,[3] of: (i) the time and place of the first creditors' meeting and the agenda for the meeting, and (ii) of the process for submitting claims electronically (via www.condor-forderungen.de, a website created for this purpose) or in writing until January 8, 2020.[4] *Debus Declaration*, ¶ 30. A copy of the Claims Procedure Order is attached as Exhibit 6 to the Debus Declaration.

28.     The Claims Procedure Order and the Commencement Order were also individually sent to all then-known insolvency creditors in December 2019. *Debus Declaration*, ¶ 31.

29.     After the initiation of the German Proceeding, the Foreign Representatives have exerted substantial efforts with respect to the German proceeding, including working with counsel and advisors to obtain debtor-in-possession financing from Kreditanstalt für Wiederaufbau, a bank owned by the German Federal Republic. *Debus Declaration*, ¶ 37.

30.     The Foreign Representatives also worked with counsel to develop an insolvency plan (the "**Former Plan**") that was submitted to the German Court on February 11, 2020 and sent to all

---

[3] The German law concept of "insolvency creditors" is equivalent to the U.S. law concept of prepetition creditors. *Esser Declaration*, ¶ 24.

[4] As explained in the Esser Declaration, this date was for organizational purposes only, and claims submitted after January 8, 2020 are still accepted. *Esser Declaration*, ¶ 27.

known insolvency creditors who had submitted claims in the German Proceeding. *Debus Declaration*, ¶ 33. Although the Former Plan was approved by the insolvency creditors, the creditors' committee, and the German Court, due to the economic downturn resulting from the COVID-19 pandemic, however, certain of the financial underpinnings of the Former Plan, in particular the acquisition of the Debtor by LOT Polish Airlines as a new investor, were rendered infeasible, and implementation of the Former Plan became impossible. *Debus Declaration*, ¶ 34.

31.     Accordingly, the Foreign Representatives continued to work with their advisors and counsel to develop a new, feasible insolvency plan (the "**Plan**") that would enable the Debtor to restructure through the German Proceeding. *Debus Declaration*, ¶ 35. An English translation of the Plan is attached to the Debus Declaration as Exhibit 7. The Plan provides for classification and treatment of creditors in accordance with the priority scheme set forth in the Insolvency Code. *Debus Declaration*, ¶ 35; *Esser Declaration*, ¶ 27. The Plan is in the process of being served to all known insolvency creditors who have filed claims in the German Proceeding, and is conditioned upon acceptance by the insolvency creditors, confirmation by the German Court, and that confirmation becoming final and non-appealable by November 30, 2020. *Debus Declaration*, ¶ 35.

32.     Several thousand claims have been submitted by insolvency creditors of the Debtor in the German Proceeding, and the Monitor's evaluation of submitted claims is ongoing. *Debus Declaration*, ¶ 38.

**IV.     Litigation in the United States**

33.     The Debtor is a defendant in three litigation matters in the United States that involve plaintiffs holding claims arising prior to the commencement of the German Proceeding, such that they are required to be administered through the German Proceeding.

(i)      **Class Action Litigation**

34.      On May 20, 2020, the action styled *Chandler v. Condor Flugdienst GmbH*, Case No. 3:20-cv-00810-AC (the "**Class Action Litigation**") was commenced by the filing of a class action complaint against the Debtor in the United States District Court for the District of Oregon (the "**Oregon District Court**"). A copy of the complaint commencing the Class Action Litigation is attached to the Debus Declaration as Exhibit 8. The Class Action Litigation asserts breach of contract claims arising out of monetary refunds for flights canceled due to the COVID-19 pandemic. *Debus Declaration*, ¶ __. Pursuant to an order entered by the Oregon District Court on September 11, 2020, the deadline for the Debtor to file a substantive response in the Class Action Litigation has been extended to October 29, 2020. *Debus Declaration*, ¶ 39. No class has yet been certified in the Class Action Litigation and the named plaintiffs are represented by (i) Liddle & Dubin, P.C. and (ii) Nick Kahl, LLC (together, "**Proposed Class Counsel**").

35.      Broadly, the putative class includes residents of the United States or its territories who purchased tickets for a Condor flight scheduled to operate from March 1, 2020 through the date of a class certification order sought from the Oregon District Court, whose flight(s) were canceled by Condor, and who were not provided a monetary refund, subject to certain exclusions. *Debus Declaration*, ¶ 40. Accordingly, the Class Action Litigation involves potential claimants who purchased tickets for travel on Condor flights both prior to and after the filing of the petition for insolvency that ultimately commenced the German Proceeding. As set forth in greater detail below and in the Esser Declaration, the Insolvency Code prohibits the payment of pre-petition debts outside of the insolvency proceeding. *See Esser Declaration* at ¶ 24. Further, the commencement of the German Proceeding implemented a stay against the commencement or continuation of efforts to recover debts incurred prior to the petition for insolvency. *See Esser Declaration* at ¶ 24.

36.     As such, the Class Action Litigation involves claims that are required to be administered in the German Proceeding, and pursuant to the Insolvency Code, Condor is unable to separately resolve these claims outside of the German Proceeding. The continuation of the Class Action Litigation with respect to these insolvency creditors' claims is in violation of the stay put in place by the German Court under the Commencement Order and the Insolvency Code.

**(ii)     Tort Action**

37.     Also pending before the Oregon District Court is an action captioned *Hagen v. Condor Flugdienst GmbH*, Case No. 3:19-cv-00422 (D. Or.) (the "**Tort Action**"), filed against Condor and its former parent corporation Thomas Cook Airlines Ltd. on March 19, 2019. *Debus Declaration*, ¶ 43. A true and correct copy of the complaint commencing Tort Action is attached to the Debus Declaration as Exhibit 9. The Tort Action involves claims for intentional infliction of emotional distress and negligence asserted by passengers on a Condor-operated flight from Frankfurt to Portland, Oregon on October 16, 2018. *Debus Declaration*, ¶ 43. As such, the Tort Action also involves insolvency creditors' claims that are required under the Insolvency Code to be resolved through the German Proceeding, and its continuation is in violation of the stay implemented by the German Court's issuance of the Commencement Order in accordance with the Insolvency Code.

**(iii)     The Puerto Rico Action**

38.     On July 8, 2020 a civil action styled *B Billboard NC LLC v. Condor Flugdienst Gesellschaft Mit Beschränkter Haftung Defts*, Case No. SJ2020CV03494 in the Estado Libre Asociado de Puerto Rico, Tribunal de Primera Instancia de Puerto Rico, Sala de Superior de San Juan (the "**Puerto Rico Action**" and, together with the Class Action Litigation and the Tort Action, the "**U.S. Actions**"). A true and correct copy of an English translation of the complaint commencing the Puerto Rico Action is attached to the *Debus Declaration* as Exhibit 10. The plaintiff in the Puerto Rico Action

seeks to recover on an insolvency claim allegedly arising under a contract for advertising services dated May 22, 2019. *Debus Declaration*, ¶ 46. Accordingly, like the Class Action Litigation and the Tort Action, the Puerto Rico Action involves claims of insolvency creditors that are required under the Insolvency Code to be administered in the German Proceeding.

## V.    The German Insolvency Code

39.    Under German law, the legal framework relating to the reorganization of debtors in insolvency located in Germany is contained in the Insolvency Code. *Esser Declaration*, ¶ 12. Pursuant to section 1 sent. 1 of the Insolvency Code, "*The purpose of insolvency proceedings is the collective satisfaction of the debtor's creditors through realization of the debtor's assets and distribution of the proceeds or through agreement on an alternative arrangement in an insolvency plan, particularly in order to preserve an ongoing business.*" Section 1 sentence 1 guarantees the equal satisfaction of all insolvency creditors. Restructuring under the Insolvency Code can be accomplished through the adoption of an insolvency plan reached between the debtor and its stakeholders, such that the debtor – preserving its legal entity – is able to reorganize its business and continue its operations as a going concern. *Esser Declaration*, ¶ 13.

40.    German debtors may commence insolvency proceedings voluntarily by the filing of a petition by management or involuntarily by creditors. *Esser Declaration*, ¶ 15.

41.    Insolvency proceedings pursuant to the Insolvency Code generally begin with the filing of the insolvency petition and the preliminary insolvency proceedings until the insolvency court commences the permanent insolvency proceedings. *Esser Declaration*, ¶ 14.

### (i)    Preliminary Insolvency Proceedings

42.    Because the filing of a petition for insolvency does not immediately commence permanent insolvency proceedings under the Insolvency Code, the purpose of preliminary insolvency

proceedings is to ensure the preservation of the debtor's assets including the continuation of its economic activity while the insolvency court determines whether grounds for opening permanent insolvency proceedings exist. *Esser Declaration*, ¶ 16.

43.     The Debtor's petition for insolvency was submitted upon the Debtor's determination that it was over-indebted as defined under the Insolvency Code. *Debus Declaration*, ¶ 21.

44.     Upon the filing of a petition for insolvency and the initiation of preliminary insolvency proceedings, the court may order protective measures to preserve the assets of the estate, including a preliminary stay of any enforcement measures against the Debtor and the appointment of a preliminary insolvency administrator (*vorläufiger Insolvenzverwalter*). *Esser Declaration*, ¶ 18.

45.     In case of a debtor that has applied for insolvency proceedings as a debtor-in-possession, the court may qualify the insolvency proceeding as a debtor-in-possession proceeding and appoint a preliminary monitor to review the financial situation and oversee the business activities of the debtor. The preliminary monitor reports to the insolvency court and creditors' committee if the debtor has taken any actions that will negatively impact the creditor body. The monitor occupies a supervisory role and does not assume control over the debtor or displace its management, nor does it have the authority to represent the company in proceedings such as chapter 15 proceedings or to make decisions on behalf of the Debtor. *Esser Declaration*, ¶ 19. Additionally, the insolvency court will designate creditor representatives to be appointed to a creditors' committee to supervise the administration of the case in the interest of all insolvency creditors. *Esser Declaration*, ¶ 19.

46.     In the case of a debtor that has applied for insolvency due to being "over-indebted" (and not due to illiquidity, as described *infra* ¶ 49) and has requested to be appointed debtor-in-possession, the debtor may also apply for protective shield proceedings under section 270b of the Insolvency Code at this time by submitting a certificate of an independent expert confirming that the debtor is not in a

14

status of existing illiquidity and has the prospect of a successful restructuring. *Esser Declaration*, ¶¶ 20. In protective shield proceedings, the debtor is able to retain control over its operations and the court may implement interim protective orders, such as a stay of creditor actions against the debtor and its assets. *Esser Declaration*, ¶ 20.

47.     In the present case, the Debtor filed a petition for insolvency when it determined that it was over-indebted and requested to be appointed as debtor-in-possession. *Debus Declaration*, ¶¶ 21, 23. Pursuant to the Preliminary Order, debtor-in-possession proceedings in the form of protective shield proceedings were commenced pursuant to section 270b of the Insolvency Code. *Debus Declaration*, ¶ 23.

### (ii)     Permanent Insolvency Proceedings

48.     Permanent insolvency proceedings will be commenced upon a determination by the insolvency court that: (i) insolvency grounds exist under the Insolvency Code, and (ii) the debtor's estate has sufficient assets to satisfy the costs of the insolvency proceedings. *Esser Declaration*, ¶ 21.

49.     The Insolvency Code provides that grounds exist for permanent insolvency proceedings where: (i) the debtor is illiquid, such that it is unable to pay its debts as they become due, known as *Zahlungsunfähigkeit*, or (ii) the debtor is over-indebted, due to its liabilities exceeding its assets, known as *Überschuldung*. *Esser Declaration*, ¶ 22. Illiquidity is a failure to be able to make payments as they become due, although the Insolvency Code provides that a debtor may also voluntarily file a petition due to pending illiquidity, *drohende Zahlungsunfähigkeit*, where there is a significant probability that the debtor will become unable to satisfy its obligations as they become due during approximately the current and subsequent fiscal year. *Esser Declaration*, ¶ 22.   Over-indebtedness is determined (in particular) by the analysis of whether a "positive business continuation forecast," can be made, which requires determination that (i) the debtor intends to continue its business, and (ii) based on an up to

date liquidity plan, it is likely that the debtor will be able to continue as a going concern – including the debtor's remaining ability to pay its debts when due – during approximately the current and the subsequent fiscal year. *Esser Declaration*, ¶ 22.

50.     The Insolvency Code requires management of financially distressed companies to monitor the company's fiscal health to determine whether grounds for insolvency proceedings may exist, and where such grounds exist, in particular managing directors may be obligated to file for insolvency proceedings under the Insolvency Code or face criminal and/or financial liability for failure or unnecessary delay to make such a filing. *Esser Declaration*, ¶ 23.

51.     A cornerstone of insolvency proceedings under the Insolvency Code is the stay on creditor actions against the debtor. In insolvency proceedings, insolvency creditors may not initiate or continue enforcement actions arising from debt existing prior to the commencement of the insolvency proceedings, but may only pursue such claims through the insolvency proceeding. *Esser Declaration*, ¶ 24. The debtor is prohibited from paying such pre-existing debts outside of the insolvency proceeding. This automatic stay mirrors the stay imposed in U.S. bankruptcy proceedings and serves to promote the Foreign Representatives' ability to deal with claims and creditors collectively and comprehensively. *Esser Declaration*, ¶ 24.

52.     The Insolvency Code provides notice to creditors of the commencement of the insolvency proceeding, of the process for submission of claims, of creditors' meetings, and of voting on the insolvency plan, which notices may be given by publication on the website designated therefore by the justice system. *Esser Declaration*, ¶ 26.

53.     The Insolvency Code provides for classification of creditors and treatment in accordance with statutory priority. *Esser Declaration*, ¶ 27. A key principle underlying the Insolvency Code and the German Proceeding is that the claims of creditors within the same class are treated on a

*pari passu* basis. *Esser Declaration*, ¶ 27 (citing Insolvency Code, section 226). Notice is given to insolvency creditors of the process for submission of claims. Although a date is typically given by which such claims should be filed, unlike the bar date for proceedings in bankruptcies under the Bankruptcy Code, this date is for organizational purposes only, and claims filed beyond this date are accepted. *Esser Declaration*, ¶ 27. So long as a creditor holds an insolvency claim, it may be submitted and asserted within one year after the plan confirmation order becomes final and non-appealable and may still be treated equally to other creditors in the same class. *Esser Declaration*, ¶ 27.

54.     The debtor may submit an insolvency plan designed to enable the debtor to restructure and emerge from insolvency proceedings as a going concern, which must be approved by vote of creditors (and of shareholders, if shareholders' rights are affected by the insolvency plan) to become effective.[5] *Esser Declaration*, ¶ 29. Upon approval and confirmation of the insolvency plan and payment by the debtor of all priority creditors (administrative claims), the insolvency court terminates the permanent insolvency proceeding. Payments from the insolvency estate to the insolvency creditors under the insolvency plan may be made by the insolvency administrator or debtor-in-possession before the termination of the case or – by the debtor only – after the termination of the case, depending on what the plan provides. *Esser Declaration*, ¶ 30.

55.     German reorganization proceedings are collective proceedings. All creditors have an opportunity to be heard by the German Court and no creditor will be prejudiced because it is foreign-based. *Esser Declaration*, ¶ 9.

---

[5] The insolvency court can override a creditor class's refusal to accept the plan if it determines that the class would not be better off in the absence of the insolvency plan, and that the plan provides the class with a reasonable share of the available distribution. *Esser Declaration*, ¶__.

(iii)   **Role of the Foreign Representatives in Debtor-in-Possession Proceedings**

56.     Although an insolvency administrator is typically appointed to assume control of the administration of the debtor's assets and operations and management of its affairs, upon application of the debtor, and where no circumstances suggest that self-administration would harm creditors' interests, the insolvency court can order the case to be a self-administered debtor-in-possession proceeding. *Esser Declaration*, ¶ 25. Debtor-in-possession proceedings under the Insolvency Code are the rough equivalent of chapter 11 debtor-in-possession proceedings. *Esser Declaration*, ¶_. Management of the debtor retains control over the debtor and assumes the role of an insolvency administrator, and a permanent monitor is appointed to continue the supervisory role held by the preliminary monitor. *Esser Declaration*, ¶ 25.

57.     In this role, management of the debtor are the designated representatives of the debtor for the duration of the insolvency proceedings. As such, the representatives work not only to continue the debtor's operations, but also to guide the debtor through the insolvency proceedings, for example by working with advisors and counsel to devise and ultimately implement an insolvency plan. *Esser Declaration*, ¶¶ 25, 31-32. The representatives communicate with creditors, cooperate with the monitor regarding the claims approval process, represent the debtor to the insolvency court, and are authorized to take any appropriate legal measure before courts in Germany or abroad, including the preparation and submission of a petition seeking recognition of a German insolvency proceeding under chapter 15 of the Bankruptcy Code. *Esser Declaration*, ¶¶ 31-32. In debtor-in-possession proceedings, the monitor is not the statutory representative of the debtor, while in insolvency proceedings that are not granted debtor-in-possession status, the court-appointed insolvency administrator assumes control and authority over the insolvency estate and effectively displaces the debtor's management. *Esser Declaration*, ¶ 25.

## RELIEF SOUGHT

58.     By this Verified Petition, the Foreign Representatives seek the following relief:

- Recognition of the German Proceeding as a foreign main proceeding pursuant to chapter 15 of the Bankruptcy Code, and Petitioners as the Debtor's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code; and

- Relief pursuant to sections 1520 and 1521 of the Bankruptcy Code.

## BASIS FOR RECOGNITION

59.     Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a "foreign proceeding" if it appears that recognition will not undermine U.S. public policy and: "(1) such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502; (2) the foreign representative applying for recognition is a person or body; and (3) the petition meets the requirements of section 1515." 11 U.S.C. § 1517(a).

60.     Each of those requirements is met here, and entry of an order substantially in the form of the Proposed Order will significantly aid the Foreign Representatives' efforts to efficiently and comprehensively address all insolvency creditors' claims through the German Proceeding, ensuring fair and equitable treatment of the Debtor's creditors and interest holders.

## I.     The German Proceeding is a Foreign Proceeding.

61.     Section 101(23) of the Bankruptcy Code defines a foreign proceeding as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). The German Proceeding undoubtedly satisfies each of these requirements.

62.     First, the German Proceeding is a judicial proceeding in a foreign country, Germany, subject to the control and supervision of the German Court. *Esser Declaration*, ¶¶ 41-42. The German Proceeding is governed by a law relating to insolvency or adjustment of debt, as it was commenced under the Insolvency Code, the German law that governs business insolvencies and contains "[a]lmost all the key provisions with regard to business insolvencies." *See, e.g.*, 3 Collier Int'l Bus. Insol. Guide ¶ 23.04[1]. The aim of the German Proceeding pursuant to the Insolvency Code is the reorganization of the Debtor.

63.     Further, the German Proceeding is a "collective … proceeding" because it "considers the rights and obligations of all creditors." *See, e.g., In re Irish Bank Resolution Corp. Ltd.*, 538 B.R. 692, 698 (D. Del. 2015) (quoting *In re Betcorp*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009)). All claims against the Debtor may be submitted in the German Proceeding and all claimants have the right to access the German Court. *Esser Declaration*, ¶ 27. The Debtor commenced the German Proceeding in Germany after consultation with various parties in interest, including its creditors. In addition, creditors have been given the right to contribute to the administration of the German Proceeding through both creditors' meetings and as part of the creditors' committee. *See* 3 Collier Int'l Bus. Insol. Guide ¶ 23.04[10]. Accordingly, the German Proceeding satisfies the definition of "foreign proceeding" set forth in section 101(23) of the Bankruptcy Code.

64.     Courts within this district have regularly granted recognition of foreign insolvency proceedings. *See, e.g., In re Broadcast Sys. & Equipment, Inc.*, Case No. 19-09737, Docket No. 7 (Bankr. N.D. Ill. April 25, 2019) (granting recognition of Canadian bankruptcy proceeding as foreign main proceeding); *In re Bluberi Gaming Techs., Inc.*, Case No. 16-05364, Docket No. 57 (Bankr. N.D. Ill. Mar. 15, 2016) (same); *In re Ace Track Co., Ltd.*, Case No. 15-13819, Docket No. 52 (Bankr. N.D.

Ill. June 4, 2015) (recognizing bankruptcy proceeding in the Republic of Korea as a foreign main proceeding).

65.     Further, numerous courts have found that German insolvency proceedings brought pursuant to the Insolvency Code qualify as "foreign proceedings" for purposes of section 101(23). *See, e.g., In re Alno AG*, Case No. 18-12651-MFW, Docket No. 40 (Bankr. D. Del. Feb. 6, 2019); *In re Air Berlin PLC & Co. Luftverkehrs KG*, Case No. 17-12282-mew, Docket No. 24 (Bankr. S.D.N.Y. September 18, 2017); *In re Reutax AG*, No. 13-12135, Docket No. 35 (Bankr. D. Del. September 1, 2013)*; In re Solar Millenium AG*, Case No. 12-11722 (KG), Docket No. 38 (Bankr. D. Del. June 15, 2012); *In re Qimonda AG*, No. 09-14766 (RGM), Docket No. 56 (Bankr. E.D. Va. July 22, 2009); *In re Industrieplanung Fischer Aktiengesellschaft*, No. 07-30662, Docket No. 7 (Bankr. M.D. Ala. June 19, 2007).

66.     For the foregoing reasons, the German Proceeding is a "foreign proceeding" within the meaning of section 1517(a)(1) of the Bankruptcy Code.

**III.     The German Proceeding is a Foreign Main Proceeding.**

67.     The German Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code because Condor's COMI is indisputably in Germany. *Debus Declaration*, ¶¶ 54-58. The Bankruptcy Code defines a "foreign main proceeding" as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign proceeding "shall be recognized" as a foreign main proceeding if it is pending where the debtor has its COMI. *See* 11 U.S.C. § 1517(b)(1).

68.     Although the Bankruptcy Code does not define "center of main interests," pursuant to section 1516(c) of the Bankruptcy Code, in the absence of evidence to the contrary, the debtor's registered office, which in this case is Germany, is presumed to be its COMI. 11 U.S.C. §1516(c). *See*

*also In re ABC Learning Centres Ltd.*, 445 B.R. 318, 333 (Bankr. D. Del. 2010) (holding that debtor's

registered jurisdiction was its COMI where debtor established the section 1516 presumption, and no

evidence was presented rebutting that presumption).

69.     Here, the registered office of Condor is in Germany, and has been since the time of its

formation in 1955. *Debus Declaration*, ¶¶ 9-10, 54. Further, there is no contrary evidence to rebut the

resulting presumption that Germany is Condor's COMI.

70.     Given the overwhelming presence of the Debtor's operations and creditors in Germany,

it would be difficult to imagine what alternative forum could be possibly considered to be the Debtor's

COMI. Under the circumstances, the Foreign Representatives submit that there is ample evidence and

precedent to support recognition of the German Proceeding as a foreign main proceeding.

## IV.    The Chapter 15 Case Has Been Commenced by Duly Authorized Foreign Representatives and Meets All Other Requirements for Recognition

71.     Section 1517 of the Bankruptcy Code provides that a "foreign representative" shall

apply for recognition of the foreign proceeding. Section 101(24) of the Bankruptcy Code defines

"foreign representative" to mean:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

72.     Concurrently herewith and attached hereto as **Exhibit C**, the Foreign Representatives

have filed a copy of the Commencement Order, together with an English translation, issued by the

German Court, commencing the Foreign Main Proceeding, stating that the Debtor will continue to

manage and dispose of its assets as part of debtor-in-possession proceedings. To that end, the Foreign

Representatives, as managing directors, will continue to manage the Debtor as a debtor-in-possession

during the self-administered German Proceeding, and prepare for and implement an insolvency plan according to the provisions of the Insolvency Code. Thus, the Foreign Representatives satisfy the requirements of section 101(24) of the Bankruptcy Code and should be determined to be "foreign representatives" within the meaning of that section pursuant to the Commencement Order. *See, e.g., In re OAS S.A.*, 533 B.R. 83, 92–95 (Bankr. S.D.N.Y. 2015) (holding that the term "foreign representatives" includes individuals authorized by the debtor itself to act in the context of foreign proceedings, such as in the situation of a debtor in possession).

73.     In addition to being a foreign main proceeding brought by duly appointed foreign representatives, the German Proceeding meets all other requirements for recognition under section 1515 of the Bankruptcy Code. The Petition is accompanied by a certified copy of the Commencement Order issued by the German Court, which evidences the commencement of the German Proceeding and the designation of the Petitioners as foreign representatives of the Debtor. The Petition also is accompanied by a declaration that contains a statement identifying all foreign proceedings with respect to the Debtor that are known to the Foreign Representatives. *See* 11 U.S.C. §§ 1515(b), (c). *See Statement of Christoph Debus Pursuant to 11 U.S.C. § 1515(c)*, filed contemporaneously herewith.

74.     The Petition likewise is accompanied by a statement containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a statement indicating all other persons or entities known to the Foreign Representatives that are authorized to administer foreign proceedings with respect to the Debtor, a list of all parties to litigation with the Debtor in the United States, and a list of all parties against whom provisional relief is being sought. *See List Filed Pursuant to Rules 1007(a)(4) and 7007.1 of the Federal Rules of Bankruptcy Procedure*, filed contemporaneously herewith.  All documents supporting the Petition are in English. *See* 11 U.S.C. § 1515(d).

75.     Lastly, granting recognition of the German Proceeding as a foreign main proceeding will not be "manifestly contrary to the public policy of the United States" pursuant to section 1506 of the Bankruptcy Code. Rather, recognition of the German Proceeding as a foreign main proceeding is consistent with U.S. policy. As set forth above, chapter 15 was enacted to, among other things, promote (i) cooperation between United States courts and foreign courts in cross-border insolvency cases, (ii) the protection of all interested parties in a cross-border insolvency, and (iii) the "maximization of the value of the debtor's assets." *See* 11 U.S.C. § 1501(a). Recognition of the German Proceeding and enforcing the Commencement Order in the U.S. will enable this Court to effectively assist the German Court in the fair and orderly administration and sale of Condor's assets by ensuring that Condor's creditors, particularly those creditors in the U.S., are enjoined from commencing or continuing actions against Condor and its assets, thus serving to protect and maximize the value of Condor's assets. Moreover, granting recognition of the German Proceeding will promote the fair and efficient administration of the German Proceeding, which will protect the interests of all stakeholders by centralizing the process of resolving claims against Condor in Germany. Thus, the Foreign Representatives' objectives advance fundamental policies of the Bankruptcy Code and U.S. law, and are not contrary to them. Accordingly, U.S. public policy favors recognition.

## **NOTICE**

76.     Contemporaneously herewith, the Debtor has filed the *Motion for Order Specifying Form and Manner of Service of Notice*. The Foreign Representatives shall provide service and notice of this Petition in accordance with  the procedures and deadlines specified in this Court's *Order Specifying Form and Manner of Service and Notice*, dated October 1, 2020, which shall constitute sufficient service and notice of this Petition.

## <u>CONCLUSION</u>

WHEREFORE, for all of the foregoing reasons, the Foreign Representatives respectfully submit that the Petition satisfies the requirements for the recognition of the Foreign Representatives as the Debtor's "foreign representatives," and for recognition of the German Proceeding as the Debtor's "foreign main proceeding," and requests entry of an order, substantially in the form of **Exhibit A** to this Petition, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: October 2, 2020           HOLLAND & KNIGHT LLP
      Chicago, Illinois

/s/ Richard A. Bixter
Richard A. Bixter, Esq.
Illinois Bar No. 6299110
Email: Richard.Bixter@hklaw.com
John J. Monaghan, Esq. (*pro hac vice admission pending*)
Massachusetts Bar No. 546454
Email: Bos-Bankruptcy@hklaw.com
HOLLAND & KNIGHT LLP
150 N. Riverside Plaza, Ste. 2700
Chicago, Illinois 60606
(312) 263-3600

*Counsel for the Foreign Representatives of the Debtor*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Christoph Debus declares as follows:

My colleagues Ralf Teckentrup, Christian Schmitt, and Detlef Specovius and I are the duly appointed representatives (the "**Foreign Representatives**") of Condor Flugdienst GmbH subject to insolvency proceedings before the *Amtsgericht Frankfurt am Main, Insolvenzgericht*, the Frankfurt on Main County Court, Insolvency Court (the "**German Court**"), Reference No. 810 IN 1209/19 C, as a result of the German Court's orders pursuant to the Insolvenzordnung, InsO.  I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Insolvency Proceedings Pursuant to Sections 1504, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code* (the "**Verified Petition**").  I have read the Verified Petition, am informed, and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  2nd  day of October, 2020, in  Neu-Isenburg, Germany,

Christoph Debus
*Foreign Representative of Condor*
*Flugdienst GmbH*

1