UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRANSMITTAL SHEET FOR OPINIONS FOR POSTING

| | |
|---|---|
| *Will this opinion be published?* | Yes |
| *Bankruptcy Caption:* | In re Condor Flugdienst GmbH |
| *Bankruptcy No.:* | 20bk18167 |
| *Date of Issuance:* | March 26, 2021 |
| *Judge:* | Timothy A. Barnes |

*Appearances*:

| | |
|---|---|
| *Attorneys for Christoph Debus, Ralf Teckentrup and Christian Schmitt, Foreign Representatives of Condor Flugdienst GmbH:* | Richard A. Bixter, John J. Monaghan and Kathleen St. John, Holland and Knight LLP, Chicago, Illinois and Boston, Massachusetts |
| *German counsel to the Foreign Representatives:* | Dr. H. Philipp Esser, Schultz & Braun Rechtsanwaltsgesellschaft, Achern, Germany |
| *Creditors appearing pro se:* | Elena and Rumen Mitzev, Vista, California |
| | Walter Wayne, Cool, California |

*Synopsis*:

Upon the Foreign Representatives' Motion for Order Granting Full Force and Effect to German Confirmation Order Pursuant to 11 U.S.C. §§ 105(a), 1521(a), 1525(a), and 1527 and Granting Related Relief and upon the *pro se* objection raised by a creditor of the debtor in this chapter 15 case, held:  The relief requested by the foreign representatives is both common and authorized by chapter 15 of the Bankruptcy Code.  The relief is necessary to effectuate the purpose of chapter 15 and to protect the assets of the debtor or the interests of the creditors, is consistent with the principles of comity and will reasonably assure the protections afforded by 11 U.S.C. § 1507(b), is in the spirit of cooperation with the Frankfurt am Main County Court, Insolvency Court and is an appropriate means of cooperation regarding the administration and supervision of the debtor's assets and affairs. The relief is also within the power of the court under 11 U.S.C. § 105(a) to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  While the recoveries to United States creditors under the debtor's foreign plan are low, that is not the measure of determining the appropriateness of the request.  The court is satisfied that United States prepetition creditors were afforded treatment no different than that afforded prepetition creditors of the debtor as a whole, that creditors had a reasonable opportunity to be heard in the foreign

proceeding and that the German insolvency proceeding has been otherwise conducted in a manner consistent with the spirt and goals of chapter 15 of the Bankruptcy Code.  As a result, the motion will be GRANTED.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) )  | Case No. 20bk18167 |
| | ) ) | |
| Condor Flugdienst GmbH, | ) ) | Chapter 15 |
| | ) ) | |
| Debtor in a Foreign Proceeding. | ) ) | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

MEMORANDUM DECISION

This matter comes on for consideration on the Foreign Representatives' Motion for Order Granting Full Force and Effect to German Confirmation Order Pursuant to 11 U.S.C. §§ 105(a), 1521(a), 1525(a), and 1527 and Granting Related Relief (the "Motion") brought by Christoph Debus, Ralf Teckentrup and Christian Schmitt, foreign representatives (the "Foreign Representatives")[1] of debtor in foreign proceeding Condor Flugdienst GmbH ("Condor").

A hearing was conducted on the Motion on February 22, 2021 (the "Hearing"), at which hearing several *pro se* United States creditors appeared. One creditor, Walter Wayne, voiced at the Hearing objections to and concerns regarding the Motion. As a result of Mr. Wayne's objections and concerns, the court took the Motion under advisement, directing the Foreign Representatives to both revise and submit their proposed order on the Motion and to submit further explanation of how United States creditors were afforded notice of the German insolvency proceedings of Condor.

Having considered the Motion and all exhibits and filings made in conjunction therewith, the statements made at the hearing and the further filings made at the direction of the court, the court grants the Motion for the reasons stated in this Memorandum Decision.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern

---

[1]      The Foreign Representatives also, pursuant to the Declaration of Christoph Debus Pursuant to 11 U.S.C. § 1515 in Support of (1) Petition for Entry of an Order Recognizing Foreign Main Proceeding and Granting Further Relief and (2) Motion for (I) Provisional Relief Pursuant to 11 U.S.C. §§ 105(a) and 1519 and (II) Approval of Shortened Notice and Limited Notice Pursuant to Fed. R. Bankr. P. 9006(c) and 9007 [Dkt. No. 7] (the "Debus Declaration") also included Detlef Specovius of the Foreign Representative's law firm, Schultze & Braun Rechtsanwaltsgesellschaft. Mr. Specovius was not one of movants in the Motion, however.

District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois.  N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(1).  Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(3).  As to the former, the court may hear and determine such matters.  28 U.S.C. § 157(b)(1).  As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties.  28 U.S.C. §§ 157(b)(1) & (c); *In re Radco Merch. Servs., Inc.*, 111 B.R. 684, 686 (N.D. Ill. 1990).  Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1).

The scope of what is or is not a core proceeding when arising in a chapter 15 case is unsettled.  *See In re Ace Track Co., Ltd.*, 556 B.R. 887, 890 (Bankr. N.D. Ill. 2016) (Barnes, J.); *In re Bluberi Gaming Techs., Inc., et al.*, 554 BR 841, 843 (Bankr. N.D. Ill. 2016) (Barnes, J.).  As was stated in *Ace Track*,

> Recognition of foreign proceedings and other matters under chapter 15 of the Bankruptcy Code are expressly core proceedings.  28 U.S.C. § 157(b)(2)(P).  At least one court has held, however, that the "other matters" language from this section is not outcome determinative.  *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 676 (S.D.N.Y. 2011) ("that 'recognition of foreign proceedings and other matters under chapter 15 of title 11' are core proceedings is not relevant" to a determination of whether such "other matters" are in fact core proceedings).  Put another way, the "other matters" catchall operates in much the same way as section 105 of the Bankruptcy Code; it helps fill in the gaps but does not allow the court to act where it clearly should not.  *See, e.g.*, *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978) ("There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted."); *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1197–98 (7th Cir. 1989) (same); *see also Bluberi Gaming Techs.*, 2016 WL 4167281, at *1.

*Ace Track*, 556 B.R. at 890.

Here, Condor and the Foreign Representatives have voluntarily submitted to this court's jurisdiction by petitioning for chapter 15 relief.  Though chapter 15 has no claims submission process whereupon a creditor's consent may be based, neither of the creditors who appeared at the Hearing voiced any concerns with respect to this court's jurisdiction and authority.  *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, ---, 135 S. Ct. 1932, 1939 (2015) (parties may consent to bankruptcy court adjudication); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (such consent may be implied by failure to raise objections).

Further, a question of relief available upon recognition under section 1521(a) of the Bankruptcy Code, cooperation with a foreign court under section 1525(a) or implementation of

2

cooperation under section 1527 are each clearly creatures of the statute itself, the Bankruptcy Code, and thus are each core proceedings arising under title 11 of the United States Code. 28 U.S.C. § 157(b)(1). So too is an exercise of the court's power under section 105 of the Bankruptcy Code. *See*, *e.g.*, *Ace Track*, 556 B.R. at 899 ("Granting … a request under section 105 is clearly within the court's authority); *see also Caesars Entm't Operating Co., Inc. v. BOKF, N.A. (In re Caesars Entm't Operating Co., Inc.)*, 808 F.3d 1186, 1188 (7th Cir. 2015) (section 105 "grants the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties").

Thus, the court has jurisdiction and constitutional authority to hear and determine this matter.

HISTORY

Condor is a commercial airline based in Germany. Founded in 1955, it has operated continuously since 1956 to the present day. Over the years, ownership of Condor shifted between various entities. Ultimately, however, Condor was and is majority owned by and controlled through the Thomas Cook Group companies.

In large part as a result of the downturn in the travel industry caused by present, worldwide pandemic, the Thomas Cook Group was ordered into compulsory liquidation in the United Kingdom on September 23, 2019. The liquidation of the Thomas Cook Group thereafter resulted in liquidation proceedings for Condor as well. On September 26, 2019, the Frankfurt am Main County Court, Insolvency Court (the "German Court"), entered a preliminary decree qualifying Condor as a debtor under German insolvency law. On December 1, 2019, the German Court entered an order formally commencing a permanent insolvency proceeding for Condor (the "Foreign Proceeding").

On October 2, 2020, the Foreign Representatives commenced the above-captioned chapter 15 case, seeking recognition of the Foreign Proceeding as a foreign main proceeding as defined in section 1502(4). On October 8, 2020, the court conducted a hearing (the "Provisional Hearing") on, among other items, the Foreign Representatives':

- Chapter 15 Petition for Recognition of a Foreign Proceeding [Dkt. No. 1] (the "Petition");

- Verified Petition for Recognition of Foreign Insolvency Proceeding to Sections 1504, 1509, 1517 and 1521 of the Bankruptcy Code (the "Verified Petition") [Dkt No. 3]; and

- Motion for (I) Provisional Relief Pursuant to 11 U.S.C. §§ 105(a) and 1519 and (II) Approval of Shortened Notice and Limited Notice Pursuant to Fed. R. Bankr. P. 9006(c) and 9007 [Dkt. No. 2] (the "Motion for Provisional Relief").

At the Provisional Hearing, the court concluded that the German Court is a foreign court as defined in section 1502(3) of the Bankruptcy Code, that the Foreign Proceeding is a collective judicial proceeding in a foreign country under a law relating to insolvency in which proceeding the assets and affairs of Condor are subject to supervision by the German Court for the purposes of

3

reorganization or liquidation, and thus is a foreign proceeding as defined in section 101(23) of the Bankruptcy Code and that Condor is therefore a debtor as defined in section 1502(1) of the Bankruptcy Code. The court further concluded that the Foreign Representatives are persons authorized in the Foreign Proceeding to act as representatives of such foreign proceeding, and thus are foreign representatives as defined in section 101(24) of the Bankruptcy Code.

Given the foregoing conclusions and given that the relief sought in the Motion for Provisional Relief was within the relief contemplated by section 1519 of the Bankruptcy Code and that such relief was urgently needed to protect the assets of Condor and the interests of its creditors, the court in the absence of an objection granted the Motion for Provisional Relief. *See* Order Granting (I) Provisional Relief Pursuant to 11 U.S.C. §§ 105(a) and 1519 and (II) Approval of Shortened Notice and Limited Notice Pursuant to Fed. R. Bankr. P. 9006(c) and 9007 [Dkt. No. 21] (the "Provisional Order").

Amongst the relief granted in the Provisional Order was a stay of proceedings against Condor's assets under section 1519(a)(1) and, pursuant to section 1519(a)(3), a general stay under section 362(a) as contemplated under section 1520(a)(1) but as limited by section 1519(f) of the Bankruptcy Code.

The Petition and Verified Petition were set over to November 10, 2020 for a recognition hearing (the "Recognition Hearing") upon a nonemergency basis after the notice contemplated by Rule 2002(q)(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 1507(a) of the Bankruptcy Code.

At the Recognition Hearing, where the Foreign Representatives, their domestic and foreign counsel, and creditors Mr. Wayne, and Elena and Rumen Mitzev appeared, the Foreign Representatives presented the case for recognition of the Foreign Proceeding as a foreign main proceeding under section 1502(4) of the Bankruptcy Code. Though Mr. Wayne and the Mitzevs appeared, they voiced no objection to the Foreign Representatives' request. In the absence of an objection and upon the Verified Petition, which the court concluded, as supplemented by Foreign Representatives after the Provisional Hearing, met the requirements of section 1515 of the Bankruptcy Code and upon the presumptions contained in section 1516 of the Bankruptcy Code, that Condor's center of main interests is in Germany and thus that the Foreign Proceeding is a foreign main proceeding as defined in section 1502(4) of the Bankruptcy Code. *See* 11 U.S.C. § 1517(b)(1).

As a result of the foregoing, the court recognized the Foreign Proceeding as a foreign main proceeding. *See* Order Pursuant to 11 U.S.C. §§ 105(a), 1504, 1515, 1520 and 1521 Recognizing Foreign Proceeding and Granting Further Relief [Dkt. No. 27] (the "Recognition Order").

In so doing, the protections afforded recognized foreign main proceedings automatically applied, including by section 1520(a)(1) the continuation of the general stay which had expired as provisional relief upon recognition pursuant to section 1519(b) of the Bankruptcy Code. Further, pursuant to section 1521(a)(1) and as needed to effectuate the purpose of chapter 15 and to protect

the assets of Condor, the court ensured that the stay was of full breadth.  *See* Recognition Order, at ¶ 2.  As a result, actions against Condor here in the United States were stayed.[2]

While the recognition request was pending before the court, the Foreign Proceeding continued before the German Court.  On October 22, 2020, the German Court entered an order (the "Confirmation Order") confirming Condor's Insolvenzplan (the "Plan").[3]  On November 26, 2020, the German Court concluded the Foreign Proceeding.

As a result, the Foreign Representatives by the Motion now petition this court for parallel relief in this chapter 15 case, namely an order implementing within the territories of the United States the Plan and concluding the chapter 15 case.

In considering the Motion, the court has considered the arguments of the parties at the Hearing on the Motion, and has reviewed and considered all of the declarations, exhibits and other filed documents submitted for consideration with the Motion.  The court has also considered its prior orders in this case and the filings made by the parties in conjunction therewith.  Though these items do not constitute an exhaustive list of the filings in the above-captioned bankruptcy case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).  In addition, the court has taken into account the history of this chapter 15 case generally.

DISCUSSION

The Motion before the court is both routine and complex at the same time.

It is routine as, even the most cursory review of the existing case law demonstrates, requests for recognition of foreign plans in chapter 15 cases have been approved by bankruptcy courts across the country.  *See, e.g.*, *In re Calfrac Well Servs. Corp.*, et al., Case No. 20-3359, Dkt. No. 184 (Bankr. S.D. Tex. Dec. 1, 2020) (granting recognition and enforcement of Canadian order and plan of arrangement); *In re Enjoy S.A.*, Case No. 20-11311(MG), Dkt. No. 36 (Bankr. S.D.N.Y. Aug. 25, 2020) (granting full force and effect to Chilean reorganization plan and confirmation order); *In re Abengoa, S.A.*, et al., Case No. 16-10754, Dkt. No. 169 (Bankr. D. Del. Dec. 8, 2016) (recognizing and enforcing Spanish insolvency plan); *In re Cline Mining Corp.*, et al., Case No. 14-26132 (Bankr. D.

---

[2]    Those actions include an uncertified, putative class action styled *Chandler v. Condor Flugdienst GmbH*, Case No. 3:20-cv-00810-AC (D. Or.) (the "Class Action"), a tort action syled *Hagen v. Condor Flugdienst GmbH*, Case No. 3:19-cv-00422 (D. Or.) (the "Tort Action"), and civil action styled *B Billboard NC LLC v. Condor Flugdienst Gesellschaft mit Beschränkter Haftung Defts*, Case No. SJ2020CV03494 (Estado Libre Asociado de Puerto Rico, Tribunal de Primera Instancia de Puerto Rico, Sala de Superior de San Juan) (together with the Class Action and the Tort Action, the "United States Litigation").  *See* Declaration of Christoph Debus Pursuant to 11 U.S.C. § 1515 in Support of (1) Petition for Entry of an Order Recognizing Foreign Main Proceeding and Granting Further Relief and (2) Motion for (I) Provisional Relief Pursuant to 11 U.S.C. §§ 105(a) and 1519 and (II) Approval of Shortened and Limited Notice Pursuant to Fed. R. Bankr. P. 9006(c) and 9007 [Dkt. No. 7].

[3]    Original, apostilled copies and translations of both the Confirmation Order and Plan are part of the record before this court.

5

Colo. Jan. 28, 2015) (recognizing and enforcing Canadian order and plan of compromise and arrangement); *In re Shermag Inc.*, et al., Case No. 08-12015, Dkt. No. 35 (Bankr. M.D.N.C. Dec. 2, 2009) (recognizing and enforcing Canadian order and plan); *In CPI Plastics Group Ltd.*, et al., Case No. 09-20175, Dkt. No. 62 (Bankr. E.D. Wisc. June 11, 2009) (recognizing and giving full force and effect to Canadian distribution order).

The court is unaware of any court of the United States that has concluded that the bankruptcy court lacks the ability to recognize and enforce foreign plans. While they may disagree on exactly which provisions of chapter 15 apply, those courts that have considered this issue openly have universally concluded the authority exists. *See, e.g.*, *In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162 (3d Cir. 2018), *as amended* (Oct. 24, 2018) (enforcing terms of Canadian plan recognized and enforced under chapter 15 in the United States); *Ad Hoc Group of Vitro Noteholders v. Vitro S.A.B. de C.V.* (*In re Vitro S.A.B. de C.V.*), 701 F.3d 1031, 1054 (5th Cir. 2012), *cert. dismissed*, 133 S. Ct. 1862 (2013) (confirming generally the propriety of enforcing foreign plans); *In re Agrokor d.d.*, 591 B.R. 163, 189 (Bankr. S.D.N.Y. 2018) ("As with section 1521, relief under section 1507 may include recognition and enforcement of a plan approved by a foreign court."); *see also In re Lupatech S.A.*, 611 B.R. 496, 502 (Bankr. S.D.N.Y. 2020) ("'Appropriate relief' under section 1521 includes enforcing a foreign order confirming a debtor's plan.").

The Fifth Circuit in *Vitro*, while it concluded that it was within the power afforded the bankruptcy court under chapter 15 of the Bankruptcy Code, considered from exactly what subsection that authority might stem. *Id.* at 1056. The problem addressed by the Fifth Circuit is that, while a portion of the relief afforded foreign main proceedings upon recognition flows automatically, *see, e.g.*, 11 U.S.C. § 1520, there remain a variety of sources of authority for nonautomatic, discretionary relief. *Compare* 11 U.S.C. § 1507(a) *with* 11 U.S.C. § 1521. There is also the potential for additional relief under the general provisions of the Bankruptcy Code. *See, e.g.*, 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.").

Under section 1507(a), a bankruptcy court "may provide additional assistance to a foreign representative under this title or under other laws of the United States." 11 U.S.C. § 1507(a). It may do so only if the additional assistance is consistent with the principles of comity and if it considers whether the additional assistance reasonably assures that the protections afforded in section 1507(b)(1)–(5) are afforded. 11 U.S.C. § 1507(b). As drafted, section 1507(b) appears to *require* that the additional assistance be consistent with comity, but does not absolutely require a court to assure the 1507(b) protections. "The legislative history confirms that the principle of comity was placed in the introductory language to section 1507 to emphasize its importance." *In re Avanti Commc'ns Grp. PLC*, 582 B.R. 603, 615 (Bankr. S.D.N.Y. 2018) (citing to *U.S. v. J.A. Jones Constr. Group, LLC,* 333 B.R. 637, 638 (E.D.N.Y. 2005) (citing legislative history); A. Gropper, *Current Devs. in Int'l Insolvency Law: A United States Perspective,* 15 J. Bankr. L. & Prac. 2, Art. 3, at 3–4 (Apr. 2006)). It need, on the other hand, only *consider* whether the other protections are reasonably afforded.

Under section 1521, a bankruptcy court may "grant *any* appropriate relief." 11 U.S.C. § 1521(a) (emphasis added). While section 1521 does provide a list of sample relief, the list is introduced with the preceding phrase and "including," which, according to the rules of interpretation of the Bankruptcy Code, is not limited. 11 U.S.C. § 102(3). Relief under section 1521 is constrained under section 1522, which provides that "the court may grant relief under section

6

1519 or 1521 … only if the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

Under section 105, the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Here we have in the Seventh Circuit specific guidance on the constraints to such relief. As the Seventh Circuit said in *Caesars*, "[t]hough section 105(a) does not give the bankruptcy court carte blanche—the court cannot, for example, take an action prohibited by another provision of the Bankruptcy Code—it grants the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties." *Caesars Entm't Operating Co., Inc.,* 808 F.3d at 1188. The Seventh Circuit has long guided the bankruptcy courts to act consistently with broader constraints imposed by the Supreme Court on all courts, that is to not use the broad equitable authority afforded the court to rewrite rules but instead to fill gaps left by Congress. *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1197–98 (7th Cir. 1989).

Given that three forms of discretionary relief are available and that each has its own, unique constraints, the question that reasonably follows is: When should the court use one or the other? It seems obvious that if the discretionary relief sought is one of the examples set forth in section 1521(a), section 1521(a) should be used and the constraints of section 1522 adhered to. *Accord Vitro*, 701 F.3d at 1056. Otherwise, however, there is no guidance in the statute itself.

The *Vitro* court considered this question as follows:

> We conclude that a court confronted by this situation should first consider the specific relief enumerated under § 1521(a) and (b). If the relief is not explicitly provided for there, a court should then consider whether the requested relief falls more generally under § 1521's grant of any appropriate relief. We understand "appropriate relief" to be relief previously available under Chapter 15's predecessor, § 304. Only if a court determines that the requested relief was not formerly available under § 304 should a court consider whether relief would be appropriate as "additional assistance" under § 1507.

*Id.* at 1054. This analysis has been adopted by courts in subsequent cases in other jurisdictions. *See, e.g.*, *In re Rede Energia S.A.*, 515 B.R. 69, 93 (Bankr. S.D.N.Y. 2014).

It is unlikely that the *Vitro* court's formulation comports with the intentions of the drafters of the Model Law, as those drafters were not expressly working with the effects of any one domestic jurisdiction's law. For example, both the express language of Article 7 and UNCITRAL's Guide to Enactment of the Model Law (1997, as amended) (the "Guide to Enactment") indicate that Article 7, the counterpart to section 1507, was to be used to ensure that the bankruptcy court has available to it assistance from other, nonbankruptcy laws of the enacting state. Guide to Enactment at ¶ 36; *see also* Model Law, art. 7. Given that intent, the drafters of the Model Law likely anticipated that a court would consider virtually all requested relief under the authority of Article 21, the counterpart to section 1521. The court would only look to Article 7, the counterpart to section 1507, only if the request invoked nonbankruptcy laws. Put another way, Article 21 was intended as the catchall source of relief, and appears to have been implemented to alleviate concerns that courts might read Article 21 too restrictively so as to limit relief to insolvency laws only.

7

Congress, however, complicated this framework when it enacted the Model Law. Article 7, as drafted, states that "[n]othing in this Law limits the power of a court … to provide additional assistance to a foreign representative under other laws of this State." Model Law, art. 7. Section 1507, on the other hand, states that "the court, if recognition is granted, may provide additional assistance to a foreign representative *under this title or* under other laws of the United States." 11 U.S.C. § 1507(a) (emphasis added). By adding the emphasized text, Congress created an overlap where none previously existed. It did so without providing guidance to help others understand why the change was made. As there is no helpful legislative history, the courts have been left to their own devices in determining how to choose between the overlapping statutes and the *Vitro* court stepped in to fill that gap.

The net result is that, while the *Vitro* court's formulation may not be compelling and isn't based in the language of the statute, it is the only cogent one available to address the overlap created by Congress. To compensate for and minimize the overlap created by Congress' broadening of Article 7, the *Vitro* court narrows the application of Article 21. Rather than applying to all requests under the insolvency laws of the state, *Vitro* limits section 1521's application to those requests that comport with relief previously available under section 304. *Accord Vitro*, 701 F.3d at 1054. While this shifts the balance intended under the Model Law, it nonetheless demonstrates that Article 7 is serving its purpose, allowing for assistance even where a court reads its authority narrowly.

Here, whether under the broader intentions of the drafters of the Model Law or the solution to the overlap formulated in *Vitro*, the result is the same. The recognition of foreign plans is relief that was available under section 304. *See, e.g.*, *Rede Energia*, 515 B.R. at 93 (citing cases). As a result, the Foreign Representatives' recognition requests should be considered first under section 1521, as guided by section 1522. Because authority exists under those sections, provided that the relief requested is kept within those limitations, there is no need to look to either section 1507 or section 105.

Given that section 1521 applies to the Motion, the court must ensure "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a).

What does that mean? Sufficient protection has been discussed at length by the Fourth Circuit in *Jaffe v. Samsung Elecs. Co.*, 737 F.3d 14, 26 (4th Cir. 2013). In *Jaffe*, the Fourth Circuit discussed section 1522's legislative history, noting that it gives "the bankruptcy court broad latitude to mold relief to meet specific circumstances, including appropriate responses if it is shown that the foreign proceeding is seriously and unjustifiably injuring United States creditors." *Id.* (citing to H.R. Rep. No. 109–31, pt. 1, at 116). In that context, the Fourth Circuit concluded that:

> Section 1522(a) requires the bankruptcy court to ensure the protection of *both* the creditors and the debtor. 11 U.S.C. § 1522(a). The provision thus requires the court to ensure that the relief a foreign representative requests under § 1521 does not impinge excessively on any one entity's interests, implying that each entity must receive at least some protection. And because the interests of the creditors and the interests of the debtor are often antagonistic, as they are here, providing protection to one side might well come at some expense to the other. The analysis required by § 1522(a) is therefore logically best done by balancing the respective interests based

8

on the relative harms and benefits in light of the circumstances presented, thus inherently calling for application of a balancing test.

*Id.* at 27–28; *see also Vitro*, 701 F.3d at 1060 (section 1522 "requires that the relief contemplated under § 1521 balance the interests of the creditors and debtors.") (citing to *In re Tri–Cont'l Exch. Ltd.*, 349 B.R. 627, 632 (Bankr. E.D. Cal. 2006) (the court must "balance the relief granted to the foreign representative and the interests of those affected by such relief, without unduly favoring one group of creditors over another.")).

As the *Vitro* court noted, "[g]iven Chapter 15's heavy emphasis on comity, it is not necessary, nor to be expected, that the relief requested by a foreign representative be identical to, or available under, United States law." *Vitro*, 701 F.3d at 1053; *cf. Allstate Life Ins. Co. v. Linter Group Ltd.*, 994 F.2d 996, 999 (2d Cir.1993) (explaining that under section 304 "there is no requirement that Australian liquidation proceedings be identical to United States bankruptcy proceedings" for them to be afforded comity). For example, a bankruptcy court may, through recognition of a foreign plan, afford relief that is not otherwise available under the Bankruptcy Code directly. *In re Metcalfe & Mansfield Alternative Invs.*, 421 B.R. 685, 697 (Bankr. S.D.N.Y. 2010) ("The relief granted in the foreign proceeding and the relief available in a U.S. proceeding need not be identical. A U.S. bankruptcy court is not required to make an independent determination about the propriety of individual acts of a foreign court."); *accord Vitro*, 701 F.3d at 1062 (concluding that third party releases can be accomplished through recognition of a foreign plan even where such relief was otherwise unavailable in a domestic United States bankruptcy case in the Fifth Circuit).

Here the undisputed evidence before the court clearly indicates that the Foreign Proceeding, the Plan and Confirmation Order afford relief that is akin to that available in United States bankruptcy proceedings. Declaration of Dr. H. Philipp Esser in Support of Foreign Representatives' Motion for Order Granting Full Force and Effect to German Confirmation Order Pursuant to 11 U.S.C. §§ 105(A), 1507(A), 1521(A), 1525(A), and 1527 and Granting Related Relief [Dkt. No. 33] (the "Esser Declaration").

First, Mr. Wayne's primary objections went to the fairness of the recovery afforded all creditors under the same, not to any disproportionate or unfair treatment of United States creditors specifically.[4] As that evidence demonstrates, however, that recovery was in accordance with German insolvency law. *Id.* at ¶ 10. United States creditors were treated no differently than creditors elsewhere and the ability of those creditors to submit claims in the Foreign Proceeding is ongoing. *Id.* at ¶ 12. The process appears both just, unprejudiced and not unduly inconvenient.

Second, Mr. Wayne raised concerns to the notice given to United States creditors and their opportunity to be heard. While the notice utilized in the Foreign Proceeding was not the same as would have been afforded here, as noted above, it is not necessary for the court to second guess those processes. *Metcalfe*, 421 B.R. at 697. The specific due process requirements of the adversarial system in the United States need not be duplicated in a foreign proceeding for that proceeding to be fair, and fairness is the ultimate goal of due process. Here, creditors were afforded the notice

---

[4]     Mr. Wayne did seem to be placated by the Foreign Representative's discussion of how vouchers would continue to apply to customers going forward. Either for the reasons stated above or because Mr. Wayne's objection was resolved, the court does not find that objection to be an impediment to recognizing and enforcing the Confirmation Order and Plan.

9

required under German law.  Esser Declaration at ¶ 12; Supplemental Declaration of Dr. H. Philipp Esser in Support of Foreign Representatives' Motion for Order Granting Full Force and Effect to German Confirmation Order Pursuant to 11 U.S.C. §§ 105(A), 1507(A), 1521(A), 1525(A), and 1527 and Granting Related Relief [Dkt. No. 35] (the "Supplemental Esser Declaration") at ¶¶ 6–14. Further, as the Supplemental Esser Declaration emphasizes, the commencement of the chapter 15 case here and notice concomitant thereto afforded all United States creditors a secondary opportunity to be heard.  It is therefore the court's conclusion that United States creditors have been fairly treated by the German Court and this court, and that the notice afforded was appropriate under the circumstances.

Last, the final concern raised at the Hearing was one raised by the Foreign Representative. Though no creditor appeared in this regard, the Foreign Representative expressed a concern that parties engaged in the United States Litigation intended to wait out the chapter 15 proceeding and then reengage in their pending actions.

If that were true, the parties in question would be operating under a mistaken understanding of how chapter 15 proceedings work.  The point behind chapter 15 proceedings is to "facilitate the consolidation of multinational bankruptcies into one single proceeding." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 30 (2d Cir. 2017); *see also* 11 U.S.C. § 1501; Model Law on Cross–Border Insolvency (1997) (the "Model Law") of the United Nations Commissions on International Trade Law ("UNCITRAL"), preamble (stating nearly identical purposes).[5]  Such facilitation includes recognizing and enforcing the terms of a foreign plan, for the reasons noted above.  In the same way that a creditor may be enjoined from pursuing its claims against a debtor after confirmation of its plan, *see, e.g.*, 11 U.S.C. § 524(g), a creditor may be enjoined through foreign plan recognition from doing the same.  11 U.S.C. §§ 1521(a) and 1507.[6]  That recognition may obviate the need for continued litigation in the United States has previously been recognized by District Courts in other jurisdictions. *Evridiki Navigation, Inc. v. Sanko S.S. Co.*, 880 F. Supp. 2d 666, 674 (D. Md. 2012) (dismissing maritime action in part because chapter 15 recognition makes "it appear[] inevitable that those claims will never be adjudicated in this Court").

As the *Sanko* case demonstrates, it matters not that the underlying claims are ones that Article I bankruptcy courts themselves would not be in a position to adjudicate. *Id.*  Bankruptcy courts have the powers afforded them under the Bankruptcy Code, and exercise of those powers may affect rights indirectly even where the bankruptcy court might otherwise be unable to act directly. *Cf. In re Millenium Seacarriers, Inc.*, 419 F.3d 83, 103 (2d Cir. 2005) (a bankruptcy court's exercise of in rem jurisdiction over assets may affect maritime rights otherwise outside of the court's

---

[5]     As is noted in section 1501(a), the purpose of chapter 15 is in part to implement the Model Law in the United States.  11 U.S.C. § 1501(a).  Further, the courts of the United States are directed by chapter 15 to consider the international origins of chapter 15 when interpreting it.  11 U.S.C. § 1508 ("In interpreting this chapter, the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions.").

[6]     Though, as noted in the court's discussion of *Vitro* above, it appears that the Foreign Representatives' request here is best considered under section 1522, it also meets the requirements of section 1507.  The injunction available under section 524(g) is clearly relief available under the Bankruptcy Code, and the court's consideration of the protections afforded all parties is set forth in detail above and the court has been careful to state the terms of its consideration under section 1522 in terms that also satisfy section 1507(b).

power to adjudicate).  A court may, for example, under the power afforded under section 524(g), enter an injunction channeling tort claims to a source of recovery even where the court itself is not the proper forum to adjudicate such claims.  *Jackson v. Owens Corning/Fibreboard Asbestos Pers. Inj. Settlement Tr.*, 585 F. App'x 908, 909 (7th Cir. 2014) (section 524 "empowers bankruptcy courts to enter an injunction that channels such claims to the trust."); *see also* 28 U.S.C. § 157(5) (directing that personal injury tort claims be tried in the district court); *Stern v. Marshall*, 564 U.S. 462, 479 (2011) (section 157(b)(5) "is not jurisdictional").

The Esser Declaration and the Supplemental Esser Declaration further demonstrate that, absent the relief granted hereby, the aims of the Foreign Proceeding and the Debtor's efforts to consummate the Plan could be impeded, a result that would be contrary to the purposes of chapter 15 of the Bankruptcy Code.  Debus Declaration at ¶ 60; Declaration of Dr. H. Philipp Esser in Support of Chapter 15 Petition of Condor Flugdienst GmbH for Recognition of Foreign Insolvency Proceeding [Dkt. No. 8] at ¶ 24–30.  As discussed at the Hearing, the actions allegedly threated by the United States Litigation creditors could threaten, frustrate, delay and ultimately jeopardize the Foreign Proceeding and implementation of the Plan, and, as a result, the Debtor, its creditors and such other parties in interest would suffer irreparable harm for which there is no adequate remedy at law.

Having United States Litigation creditors proceed in the German Court, if at all, rather than here is entirely within the spirit and express power of chapter 15.  Given that such creditors are treated on par with creditors as a whole and that nothing prevents the litigation creditors from participating in the ongoing claims process there, the court finds that such a result is not unduly burdensome on the litigation creditors.  Any hardship is outweighed by the benefits and is necessary and appropriate in the interests of the public and international comity, is consistent with the public policy of the United State and is available under the provisions of chapter 15 discussed above.

As such, the Foreign Representatives' request that, in conjunction with its recognition of the Confirmation Order and Plan, that the court expressly and permanently stay the continuation of the United States Litigation is well taken and will be granted.

CONCLUSION

Having considered the arguments of the parties, the court therefore concludes that the Motion is well taken.  The Foreign Representative's request for recognition and enforcement of the Confirmation Order and Plan comports with the requirements of sections 1521 and 1522 of the Bankruptcy Code.

For the foregoing reasons, the Motion will be granted.  A separate order to that effect will be issued concurrent with this Memorandum Decision.

Dated:  March 26, 2021                                  ENTERED:

_____
Timothy A. Barnes
United States Bankruptcy Judge

11